**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------x
DANIEL SCHNEIDER,                                       :    **No.:**
                                                        :
                Plaintiff,                  :    **COMPLAINT**
                                                        :
                -v.-                        :
                                                        :    **JURY TRIAL DEMANDED**
THOMAS PAPAIN and HOWARD BALSAM,                        :
                                                        :
                Defendants.                 :
---------------------------------------------------------------------------x

Plaintiff DANIEL SCHNEIDER ("Plaintiff" or "Mr. Schneider"), by and through his attorneys, OFFIT KURMAN, P.A., as and for his Complaint, alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a diversity action for conversion wherein two individuals, among others, those being defendants THOMAS PAPAIN (individually, "Mr. Papain") and HOWARD BALSAM (individually, "Mr. Balsam") (collectively, "Defendants"), have withheld property belonging to Mr. Schneider, despite due demand and have used such property to contribute to the building of their new business venture.

**PARTIES**

2. At all times, relevant hereto, Mr. Schneider is a natural person, and is a citizen, resident and domiciliary of the State of New Jersey.

3. At all times, relevant hereto, Mr. Papain is a natural person, and is a citizen, resident and domiciliary of the State of New York.

4. At all times, relevant hereto, Mr. Balsam is a natural person, and is a citizen, resident and domiciliary of the State of Pennsylvania.

1

## JURISDICTION AND VENUE

5. Jurisdiction is conferred upon this Court by Court by 28 U.S.C. § 1332(a)(1) as the within is a State Law claim between citizens of different states, with Plaintiff being a citizen of New Jersey and Defendants being citizens of New York and Pennsylvania.

6. Jurisdiction is conferred upon this Court by Court by 28 U.S.C. § 1332(a) as the amount in controversy exceeds $75,000.

7. This is evidenced by the fact that Mr. Schneider's 2023 K1 reflects that Mr. Balsam and Mr. Papain are holding $244,976 of Mr. Schneider's profits and/or capital, and Mr. Schneider's 2024 K1, which Mr. Schneider had no role in generating, improperly reduces Mr. Schneider's profits and/or capital such that there is a controversy in at least that amount.

8. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1) in that one defendant, Mr. Papain, lives within the boundaries of the Southern District of New York.

9. Furthermore, venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) and the events giving rise to this action occurred within the boundaries of this District, in that the monies claimed herein were, at the time Plaintiff lost access to them, were being held in banks within the boundaries of the Southern District of New York.

## JURY TRIAL DEMANDED

10. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on each and every claim as pleaded herein.

## FACTS

11. Pursuant to applicable partnership law, partners in a limited liability partnership remain personally liable for their own acts and/or omissions as well as anyone under their direct supervision. See e.g. Schuman v. Gallet, Dreyer & Berkey, L.L.P., 280 A.D.2d 310, 311 (1st Dept. 2001).

12. Mr. Schneider was a founding partner in non-party Farber Schneider Ferrari LLP, now known as Farber Balsam Papain Ferrari LLP ("FSF").

13. FSF opened in 2018 and Mr. Schneider was a Partner until October 2024.

14. In connection with the formation of FSF, Mr. Schneider was party to a partnership agreement (the "FSF Agreement") with non-parties, Michael Ferrari ("Ferrari") and Michael Farber ("Farber") to establish FSF for the purpose of doing business as a law firm in, among other places, the State of New York.

15. As Papain and Balsam were not affiliated with FSF at the time, nor were they partners, they were not parties to the FSF Agreement nor are they third-party beneficiaries.

16. Per the FSF Agreement, Mr. Schneider, Farber and Ferrari (the "Original FSF Partners") were the three partners of FSF, each with an equal partnership percentage, and each partner made a $20,000 initial capital contribution.

17. Per the FSF Agreement, each partner was to make "additional capital contributions as the Partners, in their sole discretion, shall determine.

18. Per the FSF Agreement: "All profits, losses and distributions shall be allocated and distributed to the [Original FSF] Partners in accordance with their respective Partnership Percentages."

19. Regardless of whether it was disbursed, every dollar of FSF's profits was reported on the K-1 Forms of the Original FSF Partners as compensation to each of the Original FSF Partners and taxes were paid thereon.

20. Initially each year, and thereafter, each quarter, the Original FSF Partners would agree to not disburse some of the profits, so as to keep that money in FSF for investment.

21. These profits, to which Mr. Schneider was entitled to at least 1/3, constituted further capital contributions beyond the initial capital contribution.

3

22. Over time, the Original FSF Partners left significant profits in FSF which were not reinvested which made up in whole or in part the Cash Reserves as defined below.

23. FSF was profitable in the third quarter of 2024 ("Q3").

24. Q3 profits made up, in part, the Cash Reserves as defined below.

25. On September 18, 2024, Mr. Schneider properly provided notice to FSF that he would be departing and joining a new law firm.

26. As a result, on September 21, 2024, FSF locked Mr. Schneider out, removed access from all FSF systems including bank accounts and prevented Mr. Schneider from servicing the clients who had chosen to go with him upon departure.

27. FSF further refused to pay Mr. Schneider any portion of the profits for Q3, which would have been in addition to three $10,000 guaranteed payments which were disbursed to him for the months of July, August and September 2024, despite the fact that there were over $140,000 in profits for Q3 at the time Mr. Schneider was locked out of FSF (which likely increased through the end of the quarter).

28. Throughout Mr. Schneider's tenure with FSF, he and other equity partners left significant amounts of profits in the firm for future investment.

29. At the time that Mr. Schneider was locked out, there was over $610,000.00 in cash in FSF's operating accounts (the "Cash Reserves") to which Mr. Schneider is entitled to at least one-third.

30. Following Mr. Schneider's departure, FSF collected significant fees on Mr. Schneider's work and efforts in an unknown amount (also included in "Cash Reserves") to which Mr. Schneider is entitled to at least one-third.

31. Those unpaid profits also became part of the Cash Reserves that belonged to Mr. Schneider.

32. Moreover, FSF further failed to pay Mr. Schneider various guaranteed payments and his share of the profits following Q3 to the present.

33. Furthermore, FSF failed to pay Mr. Schneider the value of his equity to exit FSF.

34. On or before October 15, 2024, the date FSF's name was amended to its present form per the Department of State, Mr. Balsam and Mr. Papain became equity partners in FSF.

35. Upon information and belief, FSF transferred the Cash Reserves to a new account/accounts to which Defendants are signatories, and/or made Defendants signatories on the existing accounts providing them access and control to the Cash Reserves.

36. No portion of those Cash Reserves has been paid out to Mr. Schneider, including his share of the profits for Q3, his capital contributions and/or the value of his equity.

37. Defendants were, are and continue to be fully aware that FSF had refused to pay the portion of the Cash Reserves to Mr. Schneider that belonged to him.

38. Upon information and belief, upon becoming equity partners at FSF, Defendants obtained access to the Cash Reserves and began to participate in the withholding of the cash reserves.

39. On January 27, 2025, Mr. Schneider emailed Mr. Balsam (at both hbalsam@newyorktrial.com and hbalsam@fsfllp.com) and Mr. Papain (at both tpapain@newyorktrial.com and tpapain@fsfllp.com) duly demanding return of the Cash Reserves as defined above.

40. None of the emails were returned and no response was received either from Mr. Balsam or Mr. Papain.

41. Defendants continue, through the date of this filing, to refuse to pay Mr. Schneider the Cash reserves, in whole or in part, that they have dominion over, to which Mr. Schneider is entitled.

42. Defendants are building their practice with Mr. Schneider's money without his authority or consent, and, in fact, in the face of his objection.

5

43. Defendants, by their own personal acts and/or omissions, have deprived Plaintiff of the benefit of his property.

44. The damages complained of herein all flow from said deprivations.

45. Plaintiff has been severely damaged thereby in an amount to be determined at trial, but believed to be in excess of $500,000.00

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**State Law Claim for Conversion**
(As Against Both Defendants)

46. Paragraphs 1 through 45 are incorporated by reference as if set forth fully herein.

47. Plaintiff is the owner of at least one-third of the Cash Reserves which reflect profits earned by him left in FSF's business and/or otherwise earned by FSF to which he is entitled.

48. Defendants have access to and authority over the Cash Reserves as incoming equity partners in FSF.

49. By the conduct complained of herein, Defendants have exercised an unauthorized dominion over Mr. Schneider's share of the Case Reserves to the exclusion of Mr. Schneider's rights.

50. Specifically, Defendants have, despite their access to the Cash Reserves, and despite due demand to them directly by Mr. Schneider, refused to provide him with the amounts he is due.

51. As a direct and proximate case of the conduct complained of herein, Plaintiff has been and continues to be damaged by Defendants in an amount to be determined at trial but believed to exceed $500,000.00.

52. Upon information and belief, it is their objective to wrongfully and permanently deprive Mr. Schneider of his share of the Cash Reserves.

53. Defendants engaged in the conduct as set forth above, willfully, wantonly, maliciously, in bad faith and/or in reckless disregard of Plaintiff's rights.

54. As a result, Plaintiff is entitled to punitive damages.

55. Thus, Plaintiff is entitled to such relief as the Court finds to be appropriate, including, but not limited to, compensatory damages in the amount exceeding $500,000.00, consequential damages, statutory interest and punitive damages.

## SECOND CLAIM FOR RELIEF
### State Law Claim for Unjust Enrichment
(Alternative Relief—As Against Both Defendants)

56. Paragraphs 1 through 55 are incorporated by reference as if set forth fully herein.

57. By the acts and/or omissions contained herein, Defendants were enriched with Plaintiff's share of the Cash Reserves and any other profits which reflect profits earned by Mr. Schneider left in FSF's business and/or otherwise earned by FSF.

58. Upon information and belief, Defendants have been able to use such property to build their business and receive other benefit therefrom.

59. By virtue of the refusal to provide Mr. Schneider with the cash reserves, in whole or in part, this enrichment of Defendants has been at Mr. Schneider's expense.

60. It is against equity and good conscience for Defendants to retain such amounts and that Mr. Schneider is entitled to such amounts.

61. As a result, Defendants have damaged Mr. Schneider and he is entitled to such relief as the Court finds to be appropriate, including, but not limited to, compensatory damages in the amount exceeding $500,000.00, consequential damages, and statutory interest.

**THIRD CLAIM FOR RELIEF**
**State Law Claim for Aiding And Abetting Conversion**
(Alternative Relief—As Against Both Defendants)

62. Paragraphs 1 through 61 are incorporated by reference as if set forth fully herein.

63. To the extent that the fact that the alleged conversion occurred prior to Defendants joining FSF as equity partners is material, Defendants are liable for aiding and abetting the continuing conversion as complained of herein.

64. Defendants have been involved in material aspects of the dispute between FSF, Farber and Ferrari on one side and Schneider on the other.

65. For instance, they participated in a failed mediation with Mr. Schneider in April 2025.

66. They also received Mr. Schneider's January 27, 2025 email as discussed above.

67. Accordingly, they had knowledge that a conversion had occurred.

68. Since they became equity partners, Defendants have materially, intentionally and substantially aided and abetted in the continuation of the conversion by participating in the continued withholding of Mr. Schneider's property.

69. Specifically, Defendants have, despite their access to the Cash Reserves, and despite due demand to them directly by Mr. Schneider, refused to provide him with the amounts he is due.

70. As a direct and proximate case of the conduct complained of herein, Plaintiff has been and continues to be damaged by Defendants in an amount to be determined at trial but believed to exceed $500,000.00.

71. Upon information and belief, it is their objective to wrongfully and permanently deprive Mr. Schneider of his share of the Cash Reserves.

72. Defendants engaged in the conduct as set forth above, willfully, wantonly, maliciously, in bad faith and/or in reckless disregard of Plaintiff's rights.

73. As a result, Plaintiff is entitled to punitive damages.

74. Thus, Plaintiff is entitled to such relief as the Court finds to be appropriate, including, but not limited to, compensatory damages in the amount exceeding $500,000.00, consequential damages, statutory interest and punitive damages.

## FOURTH CLAIM FOR RELIEF
**State Law Claim for Aiding And Abetting Unjust Enrichment**
(Alternative Relief—As Against Both Defendants)

75. Paragraphs 1 through 74 are incorporated by reference as if set forth fully herein.

76. To the extent that the fact that the alleged unjust enrichment occurred prior to Defendants joining FSF as equity partners is material, Defendants are liable for aiding and abetting the continuing unjust enrichment as complained of herein.

77. Defendants have been involved in material aspects of the dispute between FSF, Farber and Ferrari on one side and Schneider on the other.

78. For instance, they participated in a failed mediation with Mr. Schneider in April 2025.

79. They also received Mr. Schneider's January 27, 2025 email as discussed above.

80. Accordingly, they had knowledge that a unjust enrichment had occurred.

81. Since they became equity partners, Defendants have materially, intentionally and substantially aided and abetted in the continuation of the unjust enrichment by participating in the continued withholding of Mr. Schneider's property.

82. Specifically, Defendants have, despite their access to the Cash Reserves, and despite due demand to them directly by Mr. Schneider, refused to provide him with the amounts he is due.

83. As a direct and proximate case of the conduct complained of herein, Plaintiff has been and continues to be damaged by Defendants in an amount to be determined at trial but believed to exceed $500,000.00.

84. Upon information and belief, it is their objective to wrongfully and permanently deprive Mr. Schneider of his share of the Cash Reserves.

85. Thus, Plaintiff is entitled to such relief as the Court finds to be appropriate, including, but not limited to, compensatory damages in the amount exceeding $500,000.00, consequential damages, and statutory interest.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff, DANIEL SCHNEIDER respectfully requests that this Court grant a judgment in his favor against defendants, THOMAS PAPAIN and HOWARD BALSAM as follows:

(a) An award to Plaintiff, in connection with the first, second, third and fourth claims for relief, for compensatory damages in an amount to be determined at trial, but believed to be at least $500,000.00 plus consequential damages and statutory interest;

(c) An award to Plaintiff of punitive damages against Defendants for willful, wanton, malicious conduct performed in bad faith and/or in reckless disregard of Plaintiff's rights;

(d) An award to Plaintiff of reasonable costs and expenses of this litigation, including, but not limited to, attorneys' fees and expert fees; and

(f) Such other and further relief as this Court may deem just and appropriate.

Dated: New York, New York  
      August 29, 20225

Respectfully submitted,

_____  
OFFIT KURMAN, P.A.  
By: DANIEL J. SCHNEIDER  
590 Madison Avenue, 6th Floor  
New York, NY 10022  
(212) 545-1900  
daniel.schneider@offitkurman.com  
Attorney ID: DS7366

10